UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SEAN AHEARN,

                        Plaintiff,

                        -against-

MARIA HELENA BRACHOWICZ, THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, DET. JARRET BROWN, Shield #3929, Individually and in his/her Official Capacity and POLICE OFFICER'S "JOHN DOES" #1-10, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

                        Defendants.

------------------------------------------------------------------X

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF CASE**

      Plaintiff SEAN AHEARN, by his attorney, ROBERT W. GEORGES, complaining of the defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

      1.    Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

**JURISDICTION**

      2.    This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

      3.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

## VENUE

4. Venue is properly laid in the Southern District of New York under U.S.C. §1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff SEAN AHEARN is a Caucasian-American male, citizen of the United States and at all relevant times a resident of Suffolk County, State of New York.

7. Defendant MARIA HELENA BRACHOWICZ is a Spanish-American female, born in Brazil and at all relevant times a resident of New York County, State of New York.

8. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant THE CITY OF NEW YORK maintains the NEW YORK CITY POLICE DEPARTMENT, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, The City of New York.

10. At all times hereinafter mentioned, the individually named defendants DET. JARRET BROWN, and P.O.s "JOHN DOE" #1-#10 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11. At all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

13. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

## FACTS

14. At the time of his arrest, plaintiff, SEAN AHEARN, was a twenty-seven (27) year old male living on Long Island who have never previously been accused of, arrested for or convicted of rape or any sex related offense.

15. In or about early March 2013, plaintiff AHEARN met defendant MARIA HELENA BRACHOWICZ, a Columbia University dental student, on an on-line dating website. Shortly after their on-line meeting plaintiff AHEARN and defendant BRACHOWICZ exchanged cell phone numbers and began communicating, including through text messaging on a regular basis.

16. On or about March 26, 2013, plaintiff AHEARN and defendant BRACHOWICZ met in person in Manhattan and went out for dinner on the Upper West Side. During this meeting, plaintiff AHEARN and defendant BRACHOWICZ engaged in consensual sexual foreplay.

17. On or about Friday, March 29, 2013, defendant BRACHOWICZ visited plaintiff

AHEARN at his home on Long Island, and despite her original plan to return to Manhattan that evening, defendant BRACHOWICZ voluntarily stayed with plaintiff AHEARN at his home until on or about Monday, April 1, 2013.

18. During this weekend, plaintiff AHEARN and defendant BRACHOWICZ engaged in consensual sexual intercourse and recreational drug use.

19. Between on or about April 1, 2013 and April 7, 2013, plaintiff AHEARN and defendant BRACHOWICZ text messaged extensively, including about the consensual sex they had during the weekend at his home and about their feelings towards each other.

20. During this week, they also texted about how defendant BRACHOWICZ was vacillating between being in a relationship with plaintiff AHEARN and being in a relationship with another individual who she described as her boyfriend of a few years.

21. During this week, as reflected in the text messages, plaintiff AHEARN told defendant BRACHOWICZ that he contacted the boyfriend directly via social media to insult him and reveal his relationship with defendant BRACHOWICZ.

22. Despite this back and forth, plaintiff AHEARN and defendant BRACHOWICZ decided to met in person on Sunday, April 7, 2013 to spend an intimate night together at the Ritz-Carlton hotel in lower Manhattan.

23. During this night, plaintiff AHEARN and defendant BRACHOWICZ again engaged in consensual sexual intercourse. While at the Ritz-Carlton, plaintiff AHEARN and defendant BRACHOWICZ took numerous pictures together on his cell phone.

24. On or about Monday morning, April 8, 2013, plaintiff AHEARN and defendant BRACHOWICZ had breakfast together at the hotel and then shared a taxicab uptown to Penn Station before parting ways amicably.

25. On or about Monday evening April 8, 2013, defendant BRACHOWICZ informed plaintiff AHEARN that she needed to focus on school in order to graduate and that she wanted to end their relationship.

26. Approximately a week later, plaintiff AHEARN, received a telephone call from defendant BRACHOWICZ during which she invited him to have dinner with her on or about Friday, April 26, 2013 at a restaurant on the Upper West Side in Manhattan.

27. Around this same time, defendant BRACHOWICZ knowingly and intentionally contacted the New York City Police Department and made false statements to the police, in substance, stating that plaintiff AHEARN engaged in sexual intercourse with her against her will and without her permission at the Ritz-Carlton Hotel on Sunday, April 7, 2013.

28. Defendant BRACHOWICZ made these false allegations so she would not have to disclose her consensual sexual encounter and voluntary drug use with the plaintiff to her ex-boyfriend who she was reconciling with, and out of anger and ill will towards the plaintiff.

29. Defendant BRACHOWICZ made these false statements to the police for the specific purpose of getting the plaintiff arrested and prosecuted, in order to carry on the lie she was perpetuating to her boyfriend, and in spite of the fact that she knew the sex with plaintiff was consensual and that plaintiff had not committed rape or any sex offense.

30. During her conversations with the New York City Police Department, defendant BRACHOWICZ, intentionally, knowingly and with malice, omitted material details from the police regarding the true nature of her relationship with the plaintiff and her other boyfriend of which had the police known would have negated any possibility of finding probable cause that the plaintiff committed a rape or sexual offense.

31. Specifically, defendant BRACHOWICZ did not tell the police that the sex on

April 7, 2013 with plaintiff AHEARN was consensual, nor did she tell them she voluntarily took drugs with the plaintiff on that night, nor did she tell them she had voluntarily had sex with the plaintiff and taken drugs with the plaintiff on a previous occasion.

32. On or about April 26, 2013, defendant BRACHOWICZ lured plaintiff to an agreed upon restaurant but she did not appear and instead, plaintiff was arrested and taken into custody when he was handcuffed in the restaurant by two members of the New York City Police Department and brought to a local precinct.

33. At this precinct, plaintiff was informed by the officers that defendant BRACHOWICZ had accused him (falsely) of giving her illicit drugs without her knowledge or consent and having sex with her against her will and without her permission on the night of April 7, 2013 at the Ritz-Carlton hotel in lower Manhattan.

34. Upon hearing these false and baseless accusations plaintiff AHEARN immediately told the police the sex was consensual and that nothing defendant BRACHOWICZ did on April 7, 2013 was against her will. Further, plaintiff voluntarily handed over to the defendant police officers his cellular telephone which contained all of the text messages he and defendant BRACHOWICZ had exchanged since meeting in early March, as well as the photographs they had taken on plaintiff AHEARN'S phone, including photos taken on the night of April 7th and the morning of April 8th at the Ritz-Carlton in lower Manhattan, evidence which clearly eliminated any credibility in defendant BRACHOWICZ'S story and would have quickly and easily indicated to the police that plaintiff had not committed any rape or sex offense or that he gave drugs to plaintiff BRACHOWICZ without her knowledge and consent.

35. Plaintiff repeatedly asked the defendant police officers to look at the text messages and photos which they had right in front of them, in their hands, as they directly

contradicted defendant BRACHOWICZ'S accusations and would have alerted any reasonable officer of obvious reasons to seriously doubt the veracity of defendant BRACHOWICZ'S story.

36.     Despite having in their hand irrefutable evidence to discredit defendant BRACHOWICZ'S story and exonerate plaintiff AHEARN, defendant police officers refused to look at the contents of plaintiff's cell phone at all and instead callously continued to process plaintiff AHEARN'S arrest taking him to Manhattan's Central Booking.

37.     On or about April 27, 2013, plaintiff AHEARN voluntarily provided a videotaped statement to the District Attorney's Office during which he described the above outlined chain-of-events and again asked that the defendant police officers to look at the text messages and photographs on his cell phone to learn the truth.

38.     On or about April 28, 2013, plaintiff AHEARN was arraigned by a Manhattan Criminal Court judge and charged with the felony offenses of Facilitating a Sex Offense with a Controlled Substance (P.L. §130.90(1) and (2)) and Rape in the Third Degree (P.L. §130.25(1)). During this arraignment, bail was set and plaintiff AHEARN was held in custody until he was able to make bail on or about April 29, 2013 in the afternoon.

39.     During plaintiff AHEARN'S approximately three (3) days in custody he was threatened by numerous other inmates who called him a "rapist" and told him that when he got to his housing unit he would be "jumped" by other inmates.

40.     Plaintiff AHEARN was forced to defend himself against these false allegations until the case was dismissed upon motion of the District Attorney on or about June 14, 2013 in Manhattan Criminal Court shortly after the District Attorney's Office had reviewed the plaintiff's cell phone contents and realized that defendant BRACHOWICZ'S allegations were completely unreliable and plaintiff had committed no rape or sex related crime.

41. Defendants reported these false and outrageous accusations against plaintiff AHEARN to several news organizations who immediately publicized plaintiff's arrest prominently both in print publications and through multiple online news websites.

42. For example, on April 30, 2013, the NY DAILY NEWS ran an article in both their print and online editions with the headline, *"Man Charged with raping Columbia University student."* The article erroneously stated that plaintiff AHEARN had drugged the woman's drink and then had sex with her after she passed out. Also on April 30, 2013, the NY POST ran an article in both their print and online editions with the headline, *"Columbia Student Allegedly Raped at Ritz Carlton by Man She Met Online"* which also incorrectly said that plaintiff AHEARN had drugged the woman and raped her. Additional articles appeared online and in print, including one on the United Kingdom-based DAILY MAIL ONLINE website on April 30, 2013, which included five (5) pictures of plaintiff AHEARN and stated that the woman was 'drugged with liquid ecstasy and raped at the Ritz by man she met online.'

43. As a result of the actions by defendants, and its agents, servants, employees and representatives, plaintiff AHEARN suffered severe personal and very public humiliation, extreme mental anguish, and permanent damage to his reputation and standing in the community.

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983

44. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "43" with the same force and effect as if fully set forth herein.

45. All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

46. All of the aforementioned acts deprived plaintiff AHEARN of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

47. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all the actual and/or apparent authority attendant thereto.

48. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

49. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

50. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "49" with the same force and effect as if fully set forth herein.

51. As a result of the aforesaid conduct by defendants, plaintiff was subjected to illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

52. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other physical restraints, without probable cause.

## THIRD CLAIM FOR RELIEF
## STIGMA PLUS UNDER 42 U.S.C. § 1983

53. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "52" with the same force and effect as if fully set forth herein.

54. Defendants' failure to read the text messages and to view the photographs in plaintiff AHEARN'S cell phone that were provided to the defendants by plaintiff AHEARN prior to his arrest, combined with their defective investigation, false conclusions and rush to judgment are stigmatizing in that the allegations are of such an intimate and personal nature that plaintiff AHEARN will be unable to remove this cloud around his name.

55. These charges and the circumstances under which they arose will forever damage plaintiff AHEARN'S name and reputation as they unnecessarily and without plaintiff's consent brought his personal dating and social habits into the public domain where they remain, including on the internet on various popular news websites.

56. These false and erroneous charges will forever harm plaintiff as he will be forced to try to conceal this entire situation both online and in the community. Further, he will forever be left to wonder who knows about this situation and whether they know that all of the charges were in fact dismissed.

57. Defendants deprived plaintiff AHEARN of his constitutionally protected liberty interest by disseminating stigmatizing information about him knowing it would appear on the internet in perpetuity.

58. The statements are capable of being proven false, and in fact the District Attorney's Office did not believe the allegations against plaintiff after they viewed the text messages and photographs on plaintiff's phone.

59. Defendants made defamatory statements about plaintiff, which tended to expose

the plaintiff to public hatred, contempt and ridicule.

60.     Said statements specifically name plaintiff SEAN AHEARN, plaintiff's age and plaintiff's home town on Long Island and the statements made it explicitly clear that plaintiff was the individual against whom the rape allegations were made.

61.     Defendants communicated said statements to several local and national media news agencies who thereafter published said statements to the public at large, including The New York Post, The New York Daily News and others.

62.     Finally, plaintiff AHEARN faces the problem of the widespread publication as to the false accusations and their permanency on the internet.

63.     Defendants acted in bad faith and had no legitimate governmental interest in disparaging plaintiff.

64.     As a result of the actions by defendants, and its agents, servants, employees and representatives, plaintiff suffered personal humiliation, mental anguish, and permanent damage to his reputation and standing in the community.

65.     As a result of defendants actions plaintiff suffered severe economic, financial and professional harm, including but not limited to, interference with plaintiff's ability to obtain future employment due to the stigma plaintiff received which will prevent or severely limit plaintiff's ability to obtain employment.

## FOURTH CLAIM FOR RELIEF
## <u>MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983</u>

66.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "65" with the same force and effect as if fully set forth herein.

67.     Defendants misrepresented and falsified evidence before the District Attorney.

68.     Defendants did not make a complete and full statement of facts to the District

Attorney.

69. Defendants withheld exculpatory evidence from the District Attorney.

70. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff AHEARN.

71. Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

72. Defendants acted with malice in initiating criminal proceedings against plaintiff.

73. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

74. Defendants lacked probable cause to continue criminal proceedings against SEAN AHEARN.

75. Defendants acted with malice in continuing criminal proceedings against plaintiff.

76. Defendants consciously ignored, misrepresented and falsified evidence throughout all phases of the criminal proceedings.

77. Notwithstanding the perjurious, fraudulent and unreasonable conduct of defendants, the criminal proceedings were terminated in plaintiff AHEARN'S favor on or about June 14, 2013.

78. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and he was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

**FIFTH CLAIM FOR RELIEF**
**DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL**
**UNDER 42 U.S.C. § 1983**

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "78" as if the same were more fully set forth at length herein.

80. Defendants created false evidence against plaintiff AHEARN.

81. Defendants forwarded false evidence and false information to prosecutors in the New York County District Attorney's office.

82. Defendants misled the prosecutors by creating false evidence against plaintiff AHEARN and thereafter providing false testimony throughout the criminal proceedings.

83. In creating false evidence against plaintiff AHEARN in forwarding false evidence and information to prosecutors, and in providing false and misleading sworn statements, defendants violated plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

84. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other physical restraints, without probable cause.

## PENDANT STATE CLAIMS

85. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86. On or about July 18, 2013, the plaintiff duly served, presented to and filed with defendant CITY OF NEW YORK at One Centre Street, the office of the Comptroller of the City of New York, a Notice of Claim setting forth all facts and information required under the General Municipal Law § 50(h).

87. By letter dated July 22, 2013, plaintiff through the undersigned attorney, received

an ACKNOWLEDGEMENT OF CLAIM letter confirming their receipt of the Notice of Claim and assigning the case a claim number.

88.     By letter dated August 30, 2013, plaintiff through the undersigned attorney, received a NOTICE OF 50H HEARING letter which set the time, date and location for plaintiff SEAN AHEARN'S 50H Hearing at 10am on October 3, 2013 at an office in lower Manhattan.

89.     Plaintiff, in fact, submitted to a hearing pursuant to General Municipal Law Section 50(h) at the time, date and location described above.

90.     Thus, plaintiff has complied with all of the conditions precedent to maintaining the instant action.

## FIRST CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## FALSE ARREST

91.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "90" with the same force and effect as if fully set forth herein.

92.     Plaintiff was arrested in the absence of probable cause and without a warrant.

93.     As a result of the aforesaid conduct by defendants, plaintiff AHEARN was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings. The aforesaid actions by the defendants constituted a deprivation of the plaintiff's rights.

## SECOND CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## DEFAMATION/LIBEL

94.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "93" with the same force and effect as if fully set forth herein.

95.     Defendants made defamatory statements about plaintiff, which tended to expose

the plaintiff to public hatred, contempt and ridicule.

96. Said statements specifically name plaintiff, plaintiff's place of residence and plaintiff's age and made it explicitly clear that plaintiff was the individual to whom the statements were referring.

97. Defendants communicated said statements to several local and national media new agencies who thereafter published said statements to the public at large.

98. As a result of the actions by defendants, and its agents, servants, employees and representatives, plaintiff suffered personal humiliation, mental anguish, loss of earnings both past and future and permanent damage to his reputation and standing in the community.

### THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### INJURIOUS FALSEHOOD

99. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "98" with the same force and effect as if fully set forth herein.

100. Defendants made defamatory statements about plaintiff, which were understood by others in plaintiff's hometown and by the public at large to be disparaging.

101. Said statements cast doubt on plaintiff's integrity, character and criminality and were understood to cast doubt on the same.

102. Said statements were false and were made with the malicious intent to permanently injure plaintiff's name and character, and his ability to obtain future employment.

### FOURTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### MALICIOUS PROSECUTION

103. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "102" with the same force and effect as if fully set forth herein.

104. On April 27, 2013, defendants commenced a criminal proceeding against plaintiff AHEARN.

105. Defendants lacked probable cause to commence said criminal proceeding against plaintiff AHEARN.

106. Defendants were motivated by actual malice in commencing said criminal proceeding against plaintiff AHEARN.

107. From April 27, 2013 through June 14, 2013, plaintiff was forced to make personal appearances in Criminal Court (during which the media were present and took photographs) to defend himself against the unlawful prosecution initiated by defendants.

108. On June 14, 2013, the criminal prosecution against plaintiff AHEARN was terminated in his favor when the charges against him were dismissed upon motion of the District Attorney.

109. As a result of the aforementioned conduct, plaintiff suffered significant mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

### FIFTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "109" with the same force and effect as if fully set forth herein.

111. The aforementioned conduct, including refusing to look at the contents of plaintiff AHEARN'S cell phone, was extreme and outrageous, and exceeded all reasonable bounds of decency.

112. The aforementioned conduct was committed by defendants while acting within

the scope of their employment by defendant THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

113. The aforementioned conduct was committed by defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

114. The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to plaintiff.

115. As a result of the aforementioned conduct, plaintiff suffered severe emotional distress, mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

116. By reason of the aforesaid conduct by defendants, plaintiff requests the following relief:

    A. Compensatory damages in the amount of ten million dollars ($10,000,000);

    B. Punitive damages in the amount of ten million dollars ($10,000,000);

    C. An award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988, as well as costs and disbursements; and

**WHEREFORE**, plaintiff SEAN AHEARN demands judgment in the sum of ten (10) million dollars ($10,000,000.00) in compensatory damages and in punitive damages, plus attorney's fees, costs, and disbursements of this action.

Dated: New York, New York
       March 26, 2014

BY: _/s/ Robt W. Georges_

ROBERT W. GEORGES, ESQ.
*Attorney for Plaintiff Sean Ahearn*

The Woolworth Building<br>
233 Broadway, Suite 1800<br>
New York, N.Y. 10279<br>
Tel. (212) 710-5166<br>
Fax (212) 710-5162<br>
rgeorges@georgesesq.com