UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

SEAN AHEARN,

                **Plaintiff,**

   - against -

MARIA BRACHOWICZ, THE CITY OF
NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, DETECTIVE
JARRET BROWN, individually and in
his official capacity, and POLICE
OFFICERS JOHN DOES #1-10,
individually and in their official capacity,

             **Defendants.**

---------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/10/14

## OPINION AND ORDER

### 13-cv-8007 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

      Sean Ahearn brings this suit against Maria Brachowicz under New

York state law for false arrest, malicious prosecution, defamation, and intentional

infliction of emotional distress.[1]  Ahearn also brings claims against Detective Jarret

Brown, the City of New York, and John Does #1-10 ("the City Defendants") under

Section 1983 of Title 42 of the United States Code ("Section 1983") raising both

---

[1]     *See* First Amended Complaint ("Am. Compl.") ¶¶ 85-116.

federal and pendant state law claims.[2]  Ahearn alleges that the City of New York is

liable for all claims against Detective Brown because Detective Brown was acting

"pursuant to the customs, usages, practices, procedures, and the rules of the City of

New York and New York City Police Department."[3]  Maria Brachowicz and the

City Defendants both move to dismiss the Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Furthermore, because Ahearn only brings state law

claims against Maria Brachowicz, Brachowicz argues that she was improperly

joined under Federal Rule of Civil Procedure 20 and that the Court should not

exercise supplemental jurisdiction under 28 U.S.C. § 1367 for the pendant state

law claims.[4]  For the reasons set forth below, the City Defendants' motion to

dismiss the federal claims against them is granted.  The state claims against

Brachowicz and the City Defendants are remanded to state court.

---

[2]       *See id.* ¶¶ 44-78.  Ahearn also names the New York City Police
Department as a defendant in his suit.  But, "[s]ection 396 of the New York City
Charter [] clearly indicates that the NYPD is a non-suable entity. 'All actions and
proceedings for the recovery of penalties . . . shall be brought in the name of the
City of New York and not that of any agency, except where otherwise provided by
law.'" *Neishlos v. City of New York*, No. 00 Civ. 914, 2003 WL 22480043, at *1,
n.1 (S.D.N.Y. Nov. 3, 2003) (quoting 17 N.Y. City Charter § 396).  Therefore, the
claims against the New York City Police Department are dismissed.

[3]       *See* Am. Compl. ¶ 49.

[4]       *See* Maria Brachowicz's Memorandum of Law in Support of Motion
to Dismiss at 11.

## II.    BACKGROUND

### A.    The Parties

Sean Ahearn is a twenty-seven year old U.S. citizen, who is a resident of Suffolk County, New York.[5]  Defendant, Maria Brachowicz is a Columbia University dental student, who was born in Brazil, and is a resident of New York City.[6]  Defendant, the City of New York, is a municipal corporation which exists under the laws of the State of New York.[7]  Jarret Brown and "John Does" #1-10 are police officers who act under the supervision of the New York City Police Department.[8]

### B.    The Incident Leading to Ahearn's Arrest

Ahearn met Brachowicz on an online dating website in early March 2013.[9]  On March, 26, 2013, Ahearn and Brachowicz met in person and went out for dinner on the Upper West Side of Manhattan.[10]  During their time together on March 26, 2013, Ahearn and Brachowicz engaged in consensual sexual

---

[5]      *See* Am. Compl. ¶¶ 6, 14.

[6]      *See id.* ¶¶ 7, 15.

[7]      *See id.* ¶ 8.

[8]      *See id.* ¶ 10.

[9]      *See id.* ¶ 15.

[10]     *See id.* ¶ 16.

intercourse.[11]  On March 29, 2013, Brachowicz visited Ahearn at his home in Long Island.[12]  While Brachowicz had originally intended to return to Manhattan that weekend, she instead stayed with Ahearn until Monday, April 1, 2013.[13]  During this weekend, Ahearn and Brachowicz engaged in consensual sexual intercourse and recreational drug use.[14]

Between April 1, 2013 and April 7, 2013, Ahearn and Brachowicz exchanged frequent text messages.[15]  In these text messages, Ahearn and Brachowicz discussed their feelings towards each other and their sexual experience over the weekend.[16]  At the same time, Brachowicz also texted Ahearn that she was deciding whether to date Ahearn or another person who she referred to as a previous boyfriend.[17]  During this week, Ahearn informed Brachowicz that he had contacted her previous boyfriend on social media to insult him and to tell him that

---

[11]     *See id.*

[12]     *See id.* ¶ 17.

[13]     *See id.*

[14]     *See id.* ¶ 18.

[15]     *See id.*¶ 19.

[16]     *See id.*

[17]     *See id.* ¶ 20.

he was currently in a relationship with Brachowicz.[18]

On April 7, 2013, Ahearn and Brachowicz agreed to meet each other at the Ritz-Carlton Hotel in Lower Manhattan.[19]  During their time at the hotel, Ahearn and Brachowicz had sex and took pictures on Ahearn's cell phone.[20] Ahearn also admits that during their time at the hotel, both he and Brachowicz took Ecstasy.[21]  On April 8, 2013, Ahearn and Brachowicz ate breakfast at the hotel and then shared a taxi to Pennsylvania Station where they went their separate ways.[22] In the evening of April, 8, 2013, Brachowicz told Ahearn that she needed to focus on school and wanted to end their relationship.[23]

About a week later, Brachowicz called Ahearn and asked if he would be willing to meet her at a restaurant on the Upper West Side on April 26, 2013.[24] At around the same time, Brachowicz contacted the New York City Police

---

[18]     *See id.* ¶ 21.

[19]     *See id.* ¶ 22.

[20]     *See id.* ¶ 23.

[21]     *See* Transcript of ADA Interview ("Tr. ADA"), Ex. C to Declaration of Assistant Corporation Counsel Suzanna Publicker Mettham, at 26:17-29:4.

[22]     *See* Am. Compl. ¶ 24.

[23]     *See id.* ¶ 25.

[24]     *See id.* ¶ 26.

Department claiming that on April 7, 2013, she engaged in sexual intercourse with Ahearn against her will at the Ritz-Carlton Hotel.[25]  Ahearn contends that Brachowicz falsely made those statements to the New York City Police Department so she would not have to reveal to her former boyfriend that she engaged in consensual sex and voluntary drug use with Ahearn.[26]

### C.    The Arrest

On April 26, 2013, Brachowicz lured Ahearn to a restaurant on the Upper West Side under the false pretenses of a dinner date.[27]  Instead of having dinner, Ahearn was arrested and taken into custody by two members of the New York City Police Department.[28]  Ahearn was informed at the precinct that Brachowicz had accused him of giving her illicit drugs and having sexual intercourse with her against her will.[29]  Ahearn told the officers that the sexual intercourse was consensual and that Brachowicz did nothing involuntarily.[30] Ahearn further alleges that he voluntarily handed over his cell phone to the

---

[25]     *See id.* ¶ 27.

[26]     *See id.* ¶ 28.

[27]     *See id.* ¶ 32.

[28]     *See id.*

[29]     *See id.* ¶ 33.

[30]     *See id.* ¶ 34.

officers.[31]  The cell phone contained the text messages exchanged between Ahearn and Brachowicz, and the pictures taken of Ahearn and Brachowicz during their stay at the Ritz-Carlton Hotel on April 7-8, 2013.[32]  Ahearn asked the police officers to look at the cell phone, believing that the evidence on the phone was exculpatory.[33]  The police officers refused to look at the cell phone and took Ahearn to Manhattan Central Booking to continue processing his arrest.[34]

D.      **Arraignment and Dismissal**

On April 28, 2013, Ahearn was arraigned on the felony offense of Facilitating a Sex Offense with a Controlled Substance (P.L. §130.90 (1) and (2)) and Rape in the Third Degree (P.L. § 130.25 (1)).[35]  Bail was set and Ahearn was held in custody until he made bail on April 29, 2013.[36]  Ahearn alleges that during his three days in custody he was threatened numerous times and told that he would be "jumped" by other inmates.[37]  On June 14, 2013, after the District Attorney had

---

[31]     *See id.*

[32]     *See id.*

[33]     *See id.* ¶ 36.

[34]     *See id.*

[35]     *See id.* ¶ 38.

[36]     *See id.* ¶ 39.

[37]     *Id.*

reviewed the contents of Ahearn's cell phone, the allegations against Ahearn were dismissed upon motion of the District Attorney.[38]

### E.    Publication of the Incident

Report of Ahearn's arrest and the accusations against him were published in several news outlets.[39]  On April 30, 2013, the New York Daily News published an article in print and online titled "Man charged with raping Columbia University student."[40]  The article stated that Ahearn had drugged Brachowicz and then had sexual intercourse with her while she was passed out.[41]  The New York Post also published an article titled "Columbia Student Allegedly Raped at Ritz Carlton by Man She Met Online" which stated that Ahearn had drugged and raped Brachowicz.[42]  Another article regarding the allegations appeared online at the Daily Mail, which included pictures of Ahearn.[43]

## III.    LEGAL STANDARD

---

[38]     *See id.* ¶ 40.

[39]     *See id.* ¶ 41.

[40]     *See id.* ¶ 42.

[41]     *See id.*

[42]     *See id.*

[43]     *See id.*

A.      **Rule 12(b)(6) Motion to Dismiss**

In deciding a motion to dismiss under Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[44]  The court evaluates the complaint under the "two-pronged approach" set forth in *Ashcroft v. Iqbal.*[45]  *First*, a court may "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[46]  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to withstand a motion to dismiss.[47]  *Second*, "'[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"[48]

To survive a Rule 12(b)(6) motion to dismiss, the allegations in a

---

[44]     *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013) (citing *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007)).

[45]     556 U.S. 662, 679 (2009).

[46]     *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

[47]     *Id.* (quoting *Iqbal*, 556 U.S. at 678).

[48]     *Taveras v. UBS AG*, 513 Fed. App'x 19, 22 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

complaint must meet a standard of "plausibility."[49]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[50] Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[51]

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider "only the complaint, . . . any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."[52]  Allegations in the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness.[53]

## IV.   APPLICABLE LAW

### A.   Section 1983

---

[49]    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

[50]    *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[51]    *Id.* (quotation marks and citation omitted).

[52]    *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (citing *In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) (quotation marks omitted)).

[53]    *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n.1 (2d Cir. 2013) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[54]  "The purpose of [section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[55]  In order to have recourse against a municipality under section 1983, a plaintiff "must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury."[56]  Any form of liability under section 1983 requires direct involvement by the defendant in causing the

---

[54]    *Morris–Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 158-59 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  *Accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a violation of § 1983-for § 1983 by itself does not protect anyone against anything.") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

[55]    *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[56]    *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

plaintiff's damages.[57]  "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[58]

### B.    False Arrest

A section 1983 claim for false arrest arises under the Fourth Amendment right to be free from unreasonable seizure and is identical to a claim for false arrest under New York law.[59]  To establish a claim for false arrest, a plaintiff must show that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged.'"[60]

The existence of probable cause to arrest is a complete defense to a false arrest claim.[61]  "'Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are

---

[57]    *See Iqbal,* 556 U.S. at 676.

[58]    *Id.* (citations omitted).

[59]    *See Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006); *see also Jenkins v. City of New York*, 478 F.3d 76, 84–85 (2d Cir. 2007).

[60]    *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

[61]    *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) ("probable cause is a complete defense to any action for false arrest or malicious prosecution in New York").

sufficient to warrant a person of reasonable caution in the belief that an offense has

been or is being committed by the person to be arrested.'"[62]  It is well-established

that probable cause exists when information regarding an alleged crime is received

from "'a putative victim or eyewitness . . . unless the circumstances raise doubt as

to the person's veracity.'"[63]  "The evidence required to establish probable cause to

arrest 'need not reach the level of evidence necessary to support a conviction . . .

but it must constitute more than rumor, suspicion, or even a strong reason to

suspect.'"[64]

        Further, "probable cause can exist even where it is based on mistaken

information, so long as the arresting officer acted reasonably and in good faith in

relying on that information."[65]  Moreover, "'the fact that an innocent explanation

---

[62]    *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008)).  *Accord Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe than an individual has committed even a very minor criminal offense . . . he may, without violating the Fourth Amendment, arrest the offender.").

[63]    *Betts,* 751 F.3d at 82 (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).  *Accord Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citations omitted).

[64]    *Rheingold v. Harrison Town Police Dept.*, 568 F. Supp. 2d 384, 389 (S.D.N.Y. 2008) (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983)).

[65]    *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York*, 60 N.Y.2d 78 (1983)).

may be consistent with the facts alleged . . . does not negate probable cause,' and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."[66]  Thus, the relevant inquiry is whether probable cause existed at the time of arrest.

### C.    Malicious Prosecution

In order to establish a claim for malicious prosecution under section 1983, a plaintiff must allege the elements of malicious prosecution under state law.[67]  The elements of a malicious prosecution claim under New York law are: (1) the commencement or continuation of a criminal proceeding, (2) the favorable termination of that proceeding, (3) lack of probable cause, and (4) malice.[68] Probable cause defeats a claim of malicious prosecution.[69]  Probable cause, in the context of malicious prosecution, has been described as "facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."[70]

"In malicious prosecution cases brought against police officers,

---

[66]    *Panetta*, 460 F.3d at 395-96 (quoting *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985)).

[67]    *See Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir. 2002).

[68]    *See Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013).

[69]    *See Dickerson*, 604 F.3d at 751.

[70]    *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003).

plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints."[71]  Further, "[a]lthough there is a presumption that a prosecutor exercises independent judgement in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution 'when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'"[72]

For a proceeding to be favorably terminated, it need not result in an acquittal, although that is obviously sufficient.[73]  When a termination is inconclusive because it does not address the merits of the charge, the facts of the surrounding termination must be examined to determine "whether the failure to proceed implies a lack of reasonable grounds for the prosecution."[74]  Finally, malice "does not have to be actual spite or hatred, but means only 'that the

---

[71]      *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006). *Accord Cox v. County of Suffolk*, 827 F. Supp. 935, 938 (E.D.N.Y. 1993) (holding that police officer initiated prosecution against defendant when he swore and subscribed to a felony complaint).

[72]      *Mitchell*, 434 F. Supp. 2d at 227 (quoting *Brome v. City of New York*, No. 02 Civ. 7184, 2004 WL 502645, at *5-6 (S.D.N.Y. Mar. 15, 2004)).

[73]      *See Jovanovic v. City of New York,* No. 04 Civ. 8437, 2006 WL 2411541, at *10 (S.D.N.Y. Aug. 17, 2006).

[74]      *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir. 1989).

defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"[75]   In most cases, a lack of probable cause is not dispositive but "tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause."[76]

### D.    Qualified Immunity

"[G]overnment officials are entitled to some form of immunity from suits for damages.  As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability."[77]  "In the case of legislators, judges, and certain executive officials such as prosecutors, the protection usually takes the form of absolute immunity from liability for damages."[78]  "In the case of most executive employees, however, the protection takes the form of 'qualified immunity,' *i.e.*, immunity from liability if the employee was acting in subjective

---

[75]     *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)).

[76]     *Id.* (quotation marks omitted).  *Accord Ricciuti v. New York City Transit. Auth.*, 124 F.3d 123, 131 (2d Cir. 1997).

[77]     *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  *Accord Cornejo v. Bell*, 592 F.3d 121, 124 (2d Cir. 2010).

[78]     *Cornejo*, 592 F.3d at 124.

and objective good faith."[79]

  "Qualified immunity is an affirmative defense designed to protect the defendant public official not just from liability but also from suit thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial."[80]  "Qualified immunity is a defense available only to individuals sued in their individual capacity.  '[M]unicipalities have no immunity from damages for liability flowing from their constitutional violations.'"[81]  In all cases, the qualified immunity analysis mandates a fact-specific inquiry.

  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[82]  A discretionary function "involves an element of

---

[79] *Id.* (quoting *Harlow,* 457 U.S. at 807).

[80] *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010) (quotation marks, citation, and alterations omitted).  *Accord Jenkins*, 478 F.3d at 87 n.9 ("[Qualified immunity] is '*an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original))).

[81] *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012), in turn quoting *Owen v. City of Independence, Mo.*, 445 U.S. 622, 657 (1980)).

[82] *Harlow*, 457 U.S. at 818.

judgment or choice," such that the activity at issue does not have a predetermined outcome.[83]  A government official engaged in ministerial "conduct that is not the product of independent judgment will be unaffected by threat of liability" and is therefore not protected by immunity doctrines.[84]

The inquiry as to whether an eligible government official is entitled to qualified immunity is two-fold.  *First*, the court "must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right."[85]  *Second*, "the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct."[86]  Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[87]

The Second Circuit has held that a right is clearly established for qualified immunity purposes if "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a

---

[83]     *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

[84]     *Id.*

[85]     *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[86]     *Id*. (citation omitted).

[87]     *Id*. (quotation marks and citation omitted).  *Pearson* recognized, however, that the traditional sequence "is often appropriate."  *Id.* at 236.

18

reasonable defendant would have understood from the existing law that his conduct was unlawful."[88]  "'Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal.'"[89]

In the Second Circuit, an officer needs to show only "arguable" probable cause to demonstrate that he is entitled to qualified immunity.[90] "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"[91]  The Second Circuit has noted that

> [t]he result of the distinction between reasonableness as a component of a Fourth Amendment violation and reasonableness as a component of an immunity defense is that an officer is protected in some circumstances even when he 'mistakenly

---

[88]     *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quotation marks and citation omitted).  *Accord Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

[89]     *Scott v. Fischer*, 616 F.3d 100, 110 (2d Cir. 2010) (quoting *Mitchell*, 472 U.S. at 526).

[90]     *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

[91]     *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

19

concludes that probable cause is present,' when he reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted.[92]

Furthermore, in *Betts v. Shearman*, the Second Circuit stated that the "[p]laintiff's false arrest, false imprisonment, and malicious prosecution claims [] turn on whether the defendant officers' probable cause determination was objectively reasonable—that is, whether there was 'arguable' probable cause to arrest."[93]

### E.    Stigma-Plus Claim

A "stigma-plus" claim is a subset of procedural due process.  It is "brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process."[94] A stigma-plus claim has three elements, statements (1) by the government that call into question plaintiff's "good name, reputation, honor, or integrity" or "denigrate

---

[92]    *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

[93]    751 F.3d at 83 (quoting *Jenkins*, 478 F.3d at 87).

[94]    *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citations omitted).  *Accord S & D Maintenance Co., v. Goldin*, 844 F.2d 962, 970 (2d Cir. 1988) ("A government employee's liberty interest is implicated where the government dismisses him based on charges that might seriously damage his standing and associations in his community or that might impose on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities.") (quotation marks and alterations omitted).

[his] competence as a professional and impugn [his] professional reputation in such a fashion as to effectively put a significant roadblock on [his] continued ability to practice [his] profession;" (2) that were public; and (3) that "were made concurrently in time to [his] dismissal from government employment."[95]  The Second Circuit has "concluded in *Neu* [*v. Corcoran*] that *Paul v. Davis* 'strongly suggests' that defamation is not by itself a deprivation of a liberty interest unless coupled with the termination of government employment 'or deprivation of some other legal right or status.'"[96]

## V.    DISCUSSION

### A.    False Arrest and Malicious Prosecution

As a defense to Ahearn's false arrest and malicious prosecution claims, the City Defendants argue that because Detective Brown had probable

---

[95]    *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (quotation marks omitted).  With regard to the publication requirement, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest."  *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005).

[96]    *Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir. 1994) (quoting *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 709 (1976))).

cause to arrest Ahearn, he is entitled to qualified immunity.[97]  Probable cause is a

complete defense to a claim of false arrest and "continuing probable cause is a

complete defense to a constitutional claim of malicious prosecution."[98]

Brachowicz told Detective Brown that Ahearn provided her with illicit

drugs and that she engaged in sexual intercourse with Ahearn against her will.[99]

Ahearn corroborated parts of the victim's story by informing the officers that he

had sexual intercourse with Brachowicz and that he had given her Ecstasy during

their night together at the Ritz-Carlton Hotel.[100]  While Ahearn alleges that

Brachowicz's claims were false, "so long as [Detective Brown] acted reasonably

and in good faith in relying on that information[,]" then probable cause exists.[101]

Moreover, even if it is later discovered that "the informant erred, or even lied, in

---

[97]     *See* City Defendants' Memorandum of Law in Support of Motion to Dismiss at 5, 10, 12.

[98]     *Betts*, 751 F.3d at 82 (citing *Kinzer v. Jackson*, 316 F.3d 139, 143–44 (2d Cir. 2003)).

[99]     *See* Am. Compl. ¶ 33; *see also Curley*, 268 F.3d at 70.

[100]     *See* Tr. ADA at 26:17-29:4.  *See also Fernandez v. City of New York*, No. 02 Civ. 8195, 2003 WL 21756140, at *8 (S.D.N.Y. July 29, 2003).

[101]     *Bernard*, 25 F.3d at 102 (citing *Colon,* 60 N.Y.2d at 78).  *See also* Am. Compl. ¶ 27 (alleging that Brachowicz "knowingly and intentionally contacted the New York City Police Department and made false statements to the police").

[her] description of events[,]" such a discovery will not defeat probable cause.[102]

Next, Ahearn alleges that it was unreasonable for Detective Brown to refuse to look through Ahearn's cell phone because the contents on his cell phone were allegedly exculpatory.[103]  However, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."[104] Given the totality of the information available at the time of the arrest, there was no reason for Detective Brown to doubt the victim's account of the incident, especially considering that Ahearn himself corroborated part of Brachowicz's story.[105]  Probable cause exists when information is received from a "'putative victim'" unless there is reason for the officer to doubt the victim's claims.[106] Because there was no reason for Detective Brown to doubt Brachowicz's claims, it

---

[102]    *United States v. Canfield*, 212 F.3d 713, 720 (2d Cir. 2000) (citations omitted).

[103]    *See* Am. Compl. ¶ 40.

[104]    *Panetta*, 460 F.3d at 395-96.  Moreover, while the cell phone contains past text messages and pictures taken the morning after the night in question it does not necessarily demonstrate that the sexual intercourse that night was consensual.

[105]    *See Fernandez*, 2003 WL 21756140, at *8 (holding that there was no reason for the officers to doubt the witness, especially because there was evidence to corroborate the witness's account of the events).

[106]    *Betts*, 751 F.3d at 82 (quoting *Panetta*, 460 F.3d at 395).

was reasonable for him to arrest Ahearn.  Thus, Ahearn's malicious prosecution and false arrest claims fail because the officers had probable cause for the arrest.[107]

### B.    Qualified Immunity

Furthermore, even if probable cause to arrest did not exist, Detective Brown would be entitled to qualified immunity because at the very least "arguable probable cause" existed.[108]  It was at least objectively reasonable for Detective Brown to believe that probable cause existed, given that he was told by the victim that she engaged in sexual intercourse with Ahearn against her will and Ahearn independently corroborated parts of the victim's account of the night.[109]  Therefore, at a minimum, Detective Brown is entitled to qualified immunity for the false arrest and malicious prosecution claims against him.

### C.    Stigma Plus

Ahearn also alleges that Detective Brown's failure to look at Ahearn's

---

[107]    *See Bernard*, 25 F.3d at 102 (citing *Colon,* 60 N.Y.2d at 78).

[108]    *Betts*, 751 F.3d at 82-83 (quoting *Jenkins*, 478 F.3d at 87) (stating that "even in the absence of probable cause, a police officer is entitled to qualified immunity where '(1) [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for [her] to believe that [her] actions were lawful at the time of the challenged act'").

[109]    *See* Tr. ADA at 26:17-29:4.

cell phone deprived him of a "constitutionally protected liberty interest" because it led to the dissemination of "stigmatizing information about him knowing it would appear on the internet in perpetuity."[110]  As established in *Valmonte v. Bane*, however, "defamation is not by itself a deprivation of a liberty interest unless coupled with the termination of government employment 'or deprivation of some other legal right or status.'"[111]  Ahearn argues that he has alleged the "plus" aspect of the "stigma-plus" test because publication of the allegations against him "significantly damages plaintiff Ahearn's chances to gain employment."[112]  In *Valmonte*, however, the Second Circuit emphasized that the

> deleterious effects which flow directly from a sullied reputation would normally also be insufficient [to satisfy the plus].  These would normally include the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation.[113]

Ahearn was not terminated from Government employment, nor has he been

---

[110]   Am. Compl. ¶ 57.

[111]   *Valmonte,* 18 F.3d at 1000 (quoting *Neu*, 869 F.2d at 667).

[112]   Plaintiff's Opposition to the City Defendants' Motion to Dismiss at 13.

[113]   18 F.3d at 1001.

deprived of "some other legal right or status."[114]   Therefore, Ahearn has failed to establish that he has been deprived of a constitutionally protected liberty interest in his reputation.

## VI.   CONCLUSION

For the reasons set forth above, the federal claims against Detective Brown are DISMISSED with prejudice.  Because there are no remaining federal claims, I decline to exercise supplemental jurisdiction over Ahearn's remaining state law claims against the City Defendants and Brachowicz.[115]   Furthermore, because I am dismissing the federal claims against Detective Brown and the Doe defendants based on the failure to state a claim, all of the remaining claims against the City Defendants are DISMISSED.  The Clerk of the Court is ordered to close these motions [Docket Nos. 22, 30] and this case.

---

[114]      *Id.* at 1000 (quoting *Neu*, 869 F.2d at 667).

[115]      *See Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) (stating that "it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 10, 2014

**–Appearances–**


**For Plaintiff:**
Robert Wallace Georges, Esq.
The Law Office of Robert W. Georges, Esq.
233 Broadway, Suite 1800
New York, NY 10007
(212) 710-5166


**For Defendants:**
Ira S. Newman, Esq.
Law Off. I.S. Newman
98 Cutter Mill Road, Suite 441-South
Great Neck, NY 11021
(516) 487-7375

Anthony Patrick Consiglio, Esq.
Law Office of Michael G. O'Neill
30 Vesey Street
New York, NY 10007
(212) 581-0990

Robert S. Powers, Esq.
Law Office of Robert S. Powers
1540 August Road
North Babylon, NY 11703
(631) 940-7121

Sonia Haejin Lee, Esq.
Drinker Biddle & Reath, LLP
1177 Avenue of the Americas
41st Floor
New York, NY 10036
(212) 248-3191

Suzanna Publicker Mettham
Assistant Corporation Counsel

NYC Law Department
100 Church Street, RM3-200
New York, NY 10007
(212) 356-2372